[Civ. No. 1102.    Third Appellate District.—August 5, 1913.]

MARGARET OUTWATERS, Appellant, v. WALTER S. BROWNLEE, as Administrator of the Estate of Ephraim Sherwin, Deceased, Respondent.

LIMITATION OF ACTIONS—ACKNOWLEDGMENT OR NEW PROMISE.—An acknowledgment or new promise which will take a case out of the operation of the statute of limitations must be a distinct and unconditional admission of the debt which the party is liable for and willing to pay, or a direct and unqualified promise to pay the amount of the indebtedness. If the acknowledgment is complete, the law will supply the promise to pay; and if the instrument itself contains a sufficient promise, no further acknowledgment of the debt is required.

ID.—ACKNOWLEDGMENT OF INDEBTEDNESS—CERTAINTY AS TO AMOUNT.—There must be a clear and definite acknowledgment of the debt, a specification of the amount due, or a reference to something by which such amount can be definitely and certainly ascertained.

ID.—NEW PROMISE—GENERAL REQUISITES.—The new promise, which will remove the bar of the statute, must be general and unqualified. It must be a promise to enforce which an action will lie, and generally an agreement to transfer a designated deposit or other personal property cannot be enforced.

ID.—ACKNOWLEDGMENT OF INDEBTEDNESS—NEW PROMISE—WHAT DOES NOT CONSTITUTE.—An instrument dated and signed by a person since deceased, stating that he has a certain amount of money on deposit at a named bank which at his death he wishes paid to a designated person "for kindness she has shown me during my life-

time, and she is to pay all my funeral expenses and just debts," is not such an acknowledgment of an indebtedness to her or promise to pay as will remove the bar of the statute of limitations.

ACCOUNT STATED—DEFINITION AND REQUISITES.—An account stated is an agreement between the parties fixing and determining the amount due from one to the other. The instrument must show upon its face that it was intended to be a final settlement.

ID.—INSTRUMENT INSUFFICIENT AS AN ACCOUNT STATED.—An instrument dated and signed by a person since deceased, stating that he has a certain amount of money on deposit at a named bank which at his death he wishes paid to a designated person "for kindness she has shown me during my lifetime, and she is to pay all my funeral expenses and just debts," does not amount to an account stated.

ESTATE OF DECEDENT—ACTION AGAINST ADMINISTRATOR FOR SERVICES—EVIDENCE.—Such instrument is not admissible as evidence, in an action against the administrator of the estate of the deceased to recover for services rendered to him, of an intention on his part to pay any certain amount; it can do no more than indicate an intention to pay the reasonable value of the services performed.

APPEAL from a judgment of the Superior Court of Napa County and from an order refusing a new trial. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Clarence N. Riggins, for Appellant.

Nathan F. Coombs, and Frank L. Coombs, for Respondent.

BURNETT, J.—The complaint is in two counts. In the first it is alleged ''that on November 22, 1911, one Ephraim Sherwin was indebted to the plaintiff in the sum of $1,698 on an account for services rendered and food, victuals and provisions furnished by Margaret Outwaters, the plaintiff herein, to said Ephraim Sherwin at his request, and that the entire amount thereof ever since has been and still is due and owing to her; that on May 4, 1911, and while so indebted to plaintiff, said Ephraim Sherwin acknowledged said debt and promised to pay the same in a writing by him then made, signed and delivered to this plaintiff.''

In the second count the corresponding allegation is: ''That on May 4, 1911, one Ephriam Sherwin was indebted to Margaret Outwaters, the plaintiff herein, in an unliquidated amount on an account for services rendered and food, victuals,

and provisions furnished by said Margaret Outwaters to said Ephraim Sherwin at his request and that on or about the said day they mutually agreed for and in consideration of the agreements of each other that he would pay to her or cause to be paid to her and she would accept, the sum of $1,698 payable to her upon his death in full satisfaction and discharge of said unliquidated claim."

It appears, also, in each count, that said Sherwin died intestate in the city of Napa on the said November 22, 1911, and that defendant was thereafter appointed his administrator and that, on the thirteenth day of January, 1912, plaintiff duly presented her claim for said amount, which was rejected on said date by said administrator.

The case was tried before a jury and a verdict rendered in favor of plaintiff for one hundred dollars, but, being dissatisfied with the amount, she has appealed from the judgment and the order denying her motion for a new trial.

The cause of action is manifestly grounded upon the transaction of May 4, 1911, viewed in one count as a written acknowledgment of indebtedness and, in the other, as an agreed, definite adjustment of the account between the parties.

It is admitted by appellant that the evidence was sufficient to support the verdict and she states that "The appeal is based upon the action of the court in refusing to admit in evidence certain papers relied on by plaintiff." In ruling upon the question the trial judge declared that "None of these papers evidence an intent on the part of deceased to acknowledge an indebtedness of any kind, and they do not acknowledge any kind of an indebtedness. There are none of the elements of an account stated involved in the paper, nor in the testimony of the witness who was present and wrote them out; that, if they are of any force or value at all as indicating the intention of the deceased, they show he tried to make a will and failed hopelessly, because the instruments were written by Mr. Outwaters and signed by Mr. Sherwin, of course not witnessed."

The four papers thus excluded by the court were as follows:

1. "St Helena May 4th 1911. this is to certify that I have on deposit in the St. Helena Bank Sixteen Hundred & Ninety eight Dolars fifteen hundred and seven dolars in a certict of deposit and one hundred and ninety one is on deposit. this

I wish at my death to be paid over to Margaret Outwaters of St. Helena wife of N. T. Outwaters for kindness she Margaret Outwaters has shown me during my lifetime and she is to pay all my funeral expenses and whatever just debts I owe. Signed May 4th at my place of business on Hunt Avenue. (Signed) E. Sherwin.''

2. ''St. Helena May 4th, 1911. My last will and testemony I hereby will and bequeath at my death to Nelson Theadore Outwaters of St. Helena Napa Co. California my automobile. Also all of my tools and also all of my personal effects of every description my trunk and its contents I also grant N. T. Outwaters power of attorney to act without bonds. This is for love and affection and for his kindness shown me during my life time. Signed on the fourth day of May at my place of business on Hunt Avenue St. Helena Cal in the year of our lord 1911. (Signed) E. Sherwin.''

3. Blank sheet of paper, signed ''E. Sherwin.''

4. Envelope in which exhibit I was inclosed and deposited in safe deposit bank, marked: ''Margaret Outwaters, Papers from Mr. Sherwin.''

The argument, as might be supposed, is addressed principally to the first of these papers. The one purporting to be the will of deceased and the said blank sheet of paper are each so foreign and extraneous to the issues presented by the pleadings that they may be dismissed from further consideration, and the said envelope is of importance only in connection with exhibit No. 1 as evidence of delivery and acceptance of the ''stated account'' or ''acknowledgment of indebtedness.''

It is clear that, to bring the case within the contemplation of section 360 of the Code of Civil Procedure, there must be a distinct and unconditional admission of the debt which the party is liable for and willing to pay, or a direct and unqualified promise to pay the amount of the indebtedness. If the acknowledgement be complete the law will supply the promise to pay, and if the instrument itself contain a sufficient promise, no further acknowledgment of the debt is required.

In *Weinberger* v. *Weidman,* 134 Cal. 602, [66 Pac. 870], it is said: ''The promise to pay is that which renews the obligation, and no acknowledgment is sufficient unless it at least implies a promise.''

In the instrument before us there is no admission of any legal obligation to pay plaintiff any amount whatever. There is no reference to any pre-existing indebtedness. The allusion is to the *kindness* shown by plaintiff to Sherwin in his lifetime and the desire is manifested to indicate his appreciation by leaving to her the residue of his money in the bank remaining after the payment of his debts and funeral expenses. The terms employed necessarily imply gratuitous and reciprocal attentions independent of any commercial or legal exaction.

But if it were possible to construe the instrument as an acknowledgment of an indebtedness, it would still fail to meet the requirement of the law because of its uncertainty as to the amount. Indeed, no attempt is made to indicate the extent or measure of any claim of plaintiff. It will not do to say that a debt of $1,698.00 is acknowledged, as this is entirely inconsistent with the direction to pay from this sum the funeral expenses and just debts. We must infer that, on said May 4, 1911, no one could say whether after said expenses were paid there would remain one dollar or a thousand dollars or any sum, and the residue is rendered no less uncertain by attributing to said Sherwin the intention of acknowledging an indebtedness or of promising to pay it.

There must be a clear and definite acknowledgment of the debt, a specification of the amount due, or a reference to something by which such amount can be definitely and certainly ascertained. (*Shepherd* v. *Thompson,* 122 U. S. 231, [30 L. Ed. 1156, 7 Sup. Ct. Rep. 1229] ; *Miller* v. *Baschore,* 83 Pa. St. 356, [24 Am. Rep. 187] ; *Landis* v. *Rath,* 109 Pa. St. 621, [58 Am. Rep. 747, 1 Atl. 49].)

"After hands are paid, appropriate balance was held to be insufficient, being neither a specification of the debt nor a promise to pay any fixed amount." (*Fletcher* v. *Gillan,* 62 Miss. 8.)

It may be said also that the direction as to the specific property in the bank is inconsistent with appellant's position that there was a promise to pay the debt. The rule of the decisions is that the promise must be general and unqualified. It must be a promise, of course, to enforce which an action will lie, but an agreement to transfer a *designated* deposit or other personal property, generally speaking, cannot be enforced  But the complete answer to the whole contention of

appellant is found in the declaration of the trial court that the instrument constitutes a manifest attempt at testamentary disposition of said fund and, as such, it contains features entirely inconsistent with the rule governing the written acknowledgment of a debt.

The foregoing observations will apply to the claim that said instrument amounted to an account stated. There is no controversy as to the meaning of said expression. We may accept the definition given in *Harrison* v. *Henderson,* 67 Kan. 202, [72 Pac. 878], as follows: "An account stated is an agreement between the parties fixing and determining the amount due from one to the other."

The instrument must show upon its face that it was intended to be a final settlement. (*Coffee* v. *Williams,* 103 Cal. 556, [37 Pac. 504].)

The defendant must, at the time of striking the balance, admit that a certain sum was due as a debt. (*Beltaire* v. *Rosenberg,* 129 Cal. 167, [61 Pac. 916].)

The elements of an account stated, as respondent points out, are fully set forth in volume 1 of Cyc., page 365. They have already probably been sufficiently declared. We note, however, that it is therein stated that "A mere admission of something indefinite is held insufficient" and "the exact amount need not be mentioned if it can be ascertained by computation of the figures set forth."

The said instrument of May 4, construed either alone or in connection with the parol evidence of Mr. Outwaters, the only witness for plaintiff, does not measure up to the requirements of a stated account. There was no examination of the various items of the account; there was no agreement that any particular amount was due; there was no showing of any balance. There is nothing upon the face of the paper to indicate that it was intended to be a final settlement, nor are any figures set forth by which a computation can be made to determine the exact amount of the indebtedness, if any existed. It does, indeed, appear affirmatively that no balance was agreed upon, since an uncertain amount was to be deducted from the sum of $1,698.00. This negatives, of course, the idea of a final settlement by rendering uncertain the amount to be applied to the liquidation of the indebtedness.

If the parties had formally agreed in writing that Sherwin was indebted to plaintiff in the sum of $1,698.00, less an uncertain amount thereafter to be paid for just debts and funeral expenses, it could not, manifestly, be maintained that an account was thereby stated.

In her verified claim plaintiff recognized the fact that no final balance was stated in said writing, as she set forth that there were offsets consisting of "such amounts as Ephriam Sherwin may have owed and whatever charges may have been incurred on account of his funeral expenses, which said amounts, when ascertained, may offset against the within claim."

Offsets, to be thereafter determined, are manifestly inconsistent with an account stated as they preclude the idea of a final settlement but contemplate a reopening and readjustment of the indebtedness.

It is equally clear that none of these papers was admissible as evidence of intention on the part of Sherwin to pay for services that had been rendered. This consideration is so closely allied to that of "acknowledgment of indebtedness" hereinbefore discussed that it may be dismissed with scant comment. If Sherwin had directed that a certain sum be paid to plaintiff without any deductions for uncertain contingencies there would be plausibility in appellant's contention. But, as already seen, if treated as a promise of payment, it is equally consistent with the promise to pay one dollar as one thousand dollars and, therefore, it cannot be made the basis for a finding that any definite amount was due. To be of any probative value the declared intention must be associated with compensation capable of ascertainment with some degree of accuracy.

Again, since no particular amount was promised, and there was no other evidence of an express contract, the instrument could possibly do no more than to indicate a purpose and intention to pay the reasonable value of the services performed. But this the law would imply from the conduct of the parties, and no doubt the jury were so instructed, as we must conclude from the fact that they found a verdict in favor of plaintiff. In other words, their finding necessarily implies that the services were not gratuitous but that it was the intention of the

parties that plaintiff should be paid what her services were worth.

As shown by respondent, in the *Estate of Rohrer,* 160 Cal. 574, [Ann Cas. 1913A, 479, 117 Pac. 672], we find a different situation. A definite sum was attempted to be devised by the will. The attorney who drew the instrument testified that deceased had said he intended to pay a certain amount for services, by way of bequest. The amount named in the will, and stated by the attorney, was the amount of the claim. The claim was not barred by the statute of limitations and it did not require a written acknowledgment or promise for its support, but the will, although not properly executed so as to entitle it to be admitted to probate, contained a written declaration of intention on the part of deceased in exact accord with his oral promise and, of course, was clearly admissible in corroboration of the parol testimony.

At the conclusion of plaintiff's case, the court, on motion of defendant, struck from the record the testimony of the witness Outwaters as to things furnished or services rendered by the plaintiff to Mr. Sherwin prior to May 4, 1909, and instructed the jury to disregard the same save for the purpose of considering whether or not it showed any agreement on the part of Mr. Sherwin to pay the plaintiff for anything furnished or services rendered after May 4, 1909.

This is claimed to be error on the theory that there was some showing that the account was open, mutual, and current and therefore not barred as to any of the time.

The only evidence to that effect is found in the testimony of Outwaters that Sherwin did "carpenter work and furniture work. The furniture got out of repair, he would fix it, and then the doors got off the hinges, and he built a porch for her one time"; that he commenced this work twenty-five years before he died; that most of it was paid for; that some of the jobs were not paid for; that he cut off a lounge "a little more than a year ago" and "he made her a tabouret not a great while before he died, maybe six months." Further on he testified that Mr. Sherwin "was a very handy man; anything got out of fix we would send for him and he would come," and in response to the question: "How often?" the witness answered: "O, I don't know how often, perhaps a dozen times. It extended, I don't know, ten or twelve years back

until a year or so before he died, because he came there quite often.''

It was thus left in doubt whether any of these services was performed within two years of the death of Sherwin and there is no evidence that those claimed to have been performed within the two years were of any appreciable value. The court was, therefore, justified in its said action.

But the complaint was constructed, as we have seen, upon the theory that there was a written acknowledgment and final statement of indebtedness, and not that there was an open, mutual, and current account between the parties, and it was proper to confine the evidence to the issue thus tendered by plaintiff.

It is true that, in a separate defense in the answer, facts were alleged by defendant tending to show such an account and if defendant had offered proof in its support it would have been proper for plaintiff to meet it by counter evidence. This, though, and some other rulings are not urged by appellant as of sufficient gravity in themselves to justify a new trial, it being stated in the brief that ''We do not care to retry the case unless we shall have the right to introduce the papers on which we rely at the second trial.''

In view of the impeachment of the witness for the plaintiff and his apparent zeal to get possession through his wife of all the property of deceased, it is not at all probable that unless influenced by said papers any jury could be induced to award plaintiff any larger sum than one hundred dollars.

We have not overlooked respondent's contention that while the order denying the motion for a new trial should be affirmed the judgment should be reversed because the verdict does not correspond to the issue presented by plaintiff, but as respondent has not appealed he is not in a position to urge this point.

We think the judgment and order should be affirmed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 3, 1913.