[Civ. No. 1226.   Fourth Appellate District.—April 26, 1934.]

TONY PETROSINO, Respondent, v. C. K. WAKEFIELD, as Administrator, etc., Appellant.

Carl E. Lindsay and Lindsay & Gearhart for Appellant.

W. H. Stammer for Respondent.

BARNARD, P. J.—In 1921 Gerardo Sica bought a vineyard in Fresno County, consisting of 160 acres, and at the same time engaged in the business of shipping grapes from California to eastern markets, having packing-houses in several cities in this state. He resided at all times in the state of New Jersey although, up to the time of his death on April 7, 1930, he spent a short period during each year in California in connection with this business. During practically all of this time the plaintiff was employed by Sica in a supervisory capacity on this ranch and in connection with the shipping of grapes to eastern markets.

A claim filed by him with the administrator of Sica's estate having been rejected, the plaintiff brought this action, the complaint setting up two causes of action. In the first of these he sought to recover $12,154.16 for services rendered between March 1, 1922, and April 7, 1930, at the agreed and reasonable value of $125 per month. In the

second cause of action he asked for $10,104.14 upon an account stated for moneys loaned by him to the deceased during his lifetime. Findings and judgment were in his favor on both causes of action and the defendant administrator has appealed.

The court found that the claim for services prior to June 1, 1924, was barred by the statute of limitations, and further found that services were rendered by the respondent to Sica between that date and April 7, 1930, that the reasonable value of said services was $125 per month, and that the sum of $8,775 was due, owing and unpaid on account thereof. It is appellant's contention that the findings upon which this part of the judgment is based are not supported by the evidence. It is first argued that the complaint should be interpreted as alleging an agreed value for these services rather than the reasonable value thereof. Without objection the case was tried upon the theory of reasonable value for the services rendered and this point may not now be maintained. It seems to be contended that the evidence would have justified a finding that the claim for services for some period after June 1, 1924, was also barred by the statute of limitations. Be that as it may, the evidence as to the times or periods during which Sica was absent from the state during these years sufficiently sustains the finding made as to the running of the statute. The main contention is that the evidence is not sufficient to show that the respondent worked for Sica continuously between June 1, 1924, and April 7, 1930. Several witnesses testified that they knew the respondent during all of this period; that during this time his business had been the taking care of Sica's ranch and assisting in the shipping of grapes; that he was on the ranch all of the time; that he was there "pretty continuously"; and to other facts of a similar nature. A son of the deceased testified that the respondent had been connected with his father's business in Fresno County from the year 1921 until the day of his father's death; that during this time he acted as a sort of a supervisor of the ranch work and also assisted in the shipping of fruit and at the packing-houses. Without further reviewing the evidence it may be said that the same, with the reasonable inferences therefrom, is entirely sufficient to sustain the finding that the services were rendered during

the period in question. Some contention is made that the evidence is not sufficient to sustain the finding that these services were of the reasonable value of $125 a month. This contention is without merit and the record amply sustains that finding. We are unable to find any respect in which the evidence and findings do not support that portion of the judgment which covered the services rendered and which amounted to $8,775.

█ Upon the second cause of action, the court found as follows: "Within four years prior to the death of said Gerardo Sica said Gerardo Sica became indebted to the plaintiff in the sum of $10,000.00 upon an account stated for moneys loaned and advanced by the plaintiff to said Gerardo Sica at the special instance and request of said Gerardo Sica. No part of said sum has been paid except the sum of $215.00 paid on April 1st, 1925, the sum of $525.00 paid on January 15th, 1929, and the sum of $300.00 paid on September 30th, 1930; and the sum of $8,960.00, with interest on the sum of $9,785.00 from August 1st, 1927, to January 15th, 1929, interest on the sum of $9,260.00 from January 15th, 1929, to September 30th, 1930, and interest on the sum of $8,960.00 from September 30th, 1930, all at the rate of 7% per annum, is now due, owing, and unpaid from the estate of Gerardo Sica and the defendant herein to the plaintiff."

This finding is attacked by the appellant as not being supported by the evidence.

The complaint alleged that within five years prior to the death of Sica he had become indebted to the respondent in the sum of $10,104.14 upon an account stated for moneys loaned and advanced by the respondent. In this connection the court found that an account had been stated in the sum of $10,000 within four years prior to the death of Sica. In support of this finding the respondent relies upon the following evidence. Louis Sanzini testified that, in 1927, he had a conversation with Sica in which he asked him why he did not let the respondent go and that Sica replied that he could not do so as he owed him some money. In reply to a question as to how much he owed him he said "About $8000". He also testified that in another conversation, in 1928, Sica told him that he would like to pay the respondent because the respondent once loaned him

$5,000 and at another time they had a joint deal in which the respondent's share of the profit was $3,000, and that he owed him $8,000 altogether. Frank Marta testified that, in 1928, Sica told him, "If I don't have to pay Mr. Severini some money I would give Petrosino some". Ralph Fickett testified that, in 1928, he had a conversation with Sica in which Sica told him that he had borrowed $5,000 from the respondent, and that he could get no more from him as he had no more. Thomas Sica, a son of the deceased, testified that in 1929 his father told him that "he would like to make some money to pay Mr. Petrosino". E. Morello testified that in July, 1927, he had a conversation with Sica at which the respondent was present. With reference to this conversation, he testified as follows:

"A. I wanted to sell him the crop and I wanted $65 a ton F. O. B. loaded, and we argued the price, and he offered me only fifty-seven and a half, the highest price he could pay, and in the meantime he was eating, and he was saying he cannot afford to pay a higher price because he has to make money to pay Mr. Petrosino. Q. And did he say anything about how much he owed Mr. Petrosino? A. He make a number around $10,000. Q. Around $10,000? A. Yes. Q. Well how much money did he tell you he owed Petrosino? A. Around $10,000. Q. Around $10,000. Well I want to know how much? A. He mentioned $10,000. Now I didn't ask him exactly or more or less."

■ An account stated is something different from a mere acknowledgment that a party knows himself to be indebted to another in some amount. In *Bennett* v. *Potter,* 180 Cal. 736 [183 Pac. 156], the court said: "The theory upon which the action on an account stated is allowed is that transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same. The action is based on the promise to pay thus established, and if it is not expressly made, facts from which such promise will be implied must be proven."

In *American Mut. Liability Ins. Co.* v. *Building Corporation,* 88 Cal. App. 300 [263 Pac. 297], we find: "Our courts have uniformly held that: ' "An account stated presupposes an absolute acknowledgment or admission of a certain sum due or adjustment of accounts between the parties, the striking of a balance, or an assent, express or implied, to the correctness of the balance. If the acknowledgment or admission is qualified and not absolute, or if there is but an admission that something is due without specifying how much, there is no account stated, nor does an account stated exist if there is but a partial settlement of accounts without arriving at a balance, or if there is a dissent from the balance as struck." (1 Cor. Jur., p. 695, par. 2871; *Coffee* v. *Williams,* 103 Cal. 556 [37 Pac. 504].)' (*Craig* v. *Lee,* 36 Cal. App. 335 [171 Pac. 1089].)"

In *Ough* v. *Ansonio Oil Co.,* 99 Cal. App. 769 [279 Pac. 481], it is said: "An account stated presupposes not only an acknowledgment or admission of a certain sum due on adjustment of accounts between the parties, but the striking of a balance, or an assent, express or implied, to the correctness of the balance."

And in *Outwaters* v. *Brownlee,* 22 Cal. App. 535 [135 Pac. 300] : "There must be a clear and definite acknowledgment of the debt, a specification of the amount due, or a reference to something by which such amount can be definitely and certainly ascertained. (Citing cases.)"

We take it from the rules laid down in these and other cases that the stating of an account requires not only an acknowledgment or admission of a debt with an agreement to pay the same, either express or to be implied, but also that the acknowledgment and agreement to pay shall relate to a definite and fixed amount, which is either specifically stated or referred to in such a manner that the exact amount due can be definitely and certainly ascertained. We see no reason why this rule should be here changed or relaxed merely because the lips of both parties are sealed, one by death and the other by a statutory limitation upon his testimony. These very conditions and the general policy of the law with regard to claims against a deceased person would seem to justify and warrant a strict adherence to the established rules.

In examining the evidence, with these rules in mind, we are of the opinion that it fails to establish an agreement to pay a fixed and definite sum with sufficient certainty to be held to constitute an account stated. The respondent argues that such an account need not cover all matters between the parties but that they may, if desired, state an account upon one portion of their business only. Assuming that this is true, there is nothing in the evidence here to indicate that the amounts Sica admitted he owed were only a part of his obligations to the respondent and not intended to cover all amounts then owed to him. According to the findings nothing was paid on this account between 1927 and 1928, and the evidence of Sica's admission in detail, in 1928, of items totaling $8,000, as loans or advances, indicates that the sum "around $10,000" mentioned by him in 1927, if anywhere near correct, must have included something more than these loans. Again, the court found that an account was stated between these parties within four years prior to April 7, 1930, or, in other words, at some time after April 7, 1926. From the fact that the court found that the account was stated in the sum of $10,000, it would appear that this finding was based upon the testimony of Morello, which related to a conversation held in July, 1927. But while the court held that an account was then stated in the sum of $10,000, there is also the unique finding that a part of the account then stated, to wit, the sum of $215, had been paid on April 1, 1925, or more than two years before the account was stated. These findings not only illustrate the uncertainty and indefiniteness that existed with reference to the amount due but, in themselves, negative the idea that an account was stated in the exact sum of $10,000. And it would seem that even the respondent had a different idea of the amount agreed upon as he alleged in his sworn complaint that it was $10,114.14. With the exception of the testimony of the last witness, all of the conversations above referred to, relied upon by the respondent as establishing an account stated, were held when the deceased was not present, and certainly none of them could be held to be sufficient to establish that an account was stated in the sum of $10,000. The last witness referred to testified that the matter came up while he was attempting to sell some grapes to Sica. While the witness testified that

Sica admitted a debt to the respondent and that he named a figure around $10,000, he was unable to make it any more definite than that he "mentioned $10,000", and stated that he "didn't ask him exactly or more or less". If the finding that an account was stated between these parties is to be upheld, it must be sustained upon the testimony of this witness. In our opinion, this testimony is entirely too general, vague, uncertain and indefinite to meet the requirements of such a showing. While it disclosed an admission that something was owing to the respondent, it neither shows that this was something separate and apart from another amount then owed for personal services nor does it show the making of a new contract for the payment of a definite sum, or an amount that can be definitely and certainly ascertained.

The judgment was for $20,834.44 and it appears from the findings and conclusions of law that this was made up of the $8,775 found to be due upon the first cause of action, plus $10,000 found to be due upon an account stated, with credit for various payments made thereon, and with interest from August 1, 1927, on the respective balances after deducting the payments upon the account stated. For the reasons given, the judgment should be modified by striking therefrom all in excess of the sum of $8,775 which was found to be due upon the first cause of action.

The judgment is modified by reducing the amount thereof to $8,775 and, as so modified, the same is affirmed.

Marks, J., and Jennings, J., concurred.