[Civ. No. 1107. Fourth Appellate District.—August 4, 1934.]

MARGARET ROGERS, Appellant, v. DONALD C. BURNHAM, as Executor, etc., Respondent.

Bertrand L. Comparet for Appellant.

Stearns, Luce & Forward and Fred Kunzel for Respondent.

BARNARD, P. J.—In May, 1927, Julia Ann Smith went to live at a nursing home operated by the plaintiff. She was then about eighty years old, had no living relatives and was convalescing from a broken hip. By agreement she was to pay the plaintiff $100 per month for board, room and ordinary daytime nursing care. It was also understood that, in addition, she was to pay for any massages and night nursing which might be required. She remained at the plaintiff's home until the middle of October, 1930, the monthly compensation being paid each month by check, and during that time fourteen additional payments were made to the plaintiff, totaling $139.56. Early in August, 1930, she fell and again injured her hip, after which time she remained either in bed or in a wheel chair. During that month the plaintiff requested an increase in compensation and, by agreement, the monthly compensation was raised to $135, which amount was thereafter paid. Beginning in August, 1930, a Mrs. Burton, a niece of the plaintiff was employed as a night nurse for some five or six weeks and was paid by six separate checks which total $154. The first of these checks, one for $15, was given on

August 28, 1930. On the same day a check for $135 was given to the plaintiff, and also another check, for $10,000, which is the basis of this action.

On September 1, 1930, Miss Smith's bank account was transferred into a joint tenancy account with one Caroline Wood, who thereafter wrote and signed all checks for Miss Smith because she was unable to write. On October 15, 1930, Miss Smith was removed from the plaintiff's home and on October 31, 1930, she was judicially declared to be incompetent and a guardian appointed. On November 5, 1930, the check for $10,000, dated August 28, 1930, was first presented to the bank and was returned to the plaintiff because of insufficient funds. It appears from the evidence that on August 28, 1930, Miss Smith had only $1200 in her checking account in the bank. A claim against the estate of the incompetent, based on the check, which was presented on November 13, 1930, was rejected on November 14, 1930, and no further action was taken during the lifetime of Miss Smith. She died on July 19, 1931, and on January 25, 1932, a claim was filed against her estate in the sum of $10,000 "for agreed compensation for services rendered". The claim was rejected by the executor on January 29, 1932, and this action was filed on June 3, 1932. The court found in all respects in favor of the defendant and the plaintiff has appealed.

The only point raised is that the evidence is not sufficient to support two findings which read as follows:

"That it is not true that within two years last past, or at any time, at the special request and instance of Julia Ann Smith, deceased, the plaintiff performed certain special services for said Julia Ann Smith; that it is not true that said services consisted of taking care of Julia Ann Smith during serious illness and spending much time with said Julia Ann Smith, both day and night, during said serious illness; that it is not true that said extra services were not contemplated in the contract or agreement of employment theretofore entered into between the plaintiff and said Julia Ann Smith; that it is not true that immediately after the termination of said special services and after her recovery from said serious illness, and on or about the 28th day of August, 1930, the said Julia Ann Smith promised and agreed to pay the plaintiff herein as payment for said special services

rendered the sum of Ten Thousand Dollars ($10,000), or any other sum; that it is not true that the said sum of Ten Thousand Dollars ($10,000), or any other sum, is now due, owing and unpaid to the plaintiff.''

''That it is not true that there was ever an account stated between said Julia Ann Smith, deceased, and the plaintiff herein.''

In support of this contention the appellant argues that the $10,000 check and the testimony of Mrs. Burton as to what occurred at the time it was executed are each sufficient to make out a *prima facie* case of an account stated; that no evidence was introduced by the respondent sufficient to rebut the *prima facie* showing; that the only evidence as to what occurred at the time the check was signed, that given by Mrs. Burton, proves an account stated; and that since this evidence was not inherently incredible, the court was not justified in rejecting or disbelieving the same.

The general requisites of an account stated are set forth in *Bennett* v. *Potter*, 180 Cal. 736 [183 Pac. 156], as follows:

''The theory upon which the action on an account stated is allowed is that transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same.''

■ There must be an admission by the debtor at the time of striking the balance that a definite amount, or an amount which can be definitely determined, was due as a debt. (*Beltaire* v. *Rosenberg*, 129 Cal. 164 [61 Pac. 916]; *Outwaters* v. *Brownlee*, 22 Cal. App. 535 [135 Pac. 300].)

■ In addition to the check itself, the appellant relies upon the testimony of Mrs. Burton, to the effect that some extra services were performed for Miss Smith, as establishing such a relationship of debtor and creditor. It is also claimed that the testimony of this witness shows the required definite admission of the debtor that a definite amount was due as a debt, with an agreement to pay that

sum. With reference to the extra services claimed to have been rendered, Mrs. Burton testified that she was in the appellant's home at frequent intervals from October, 1929, until Miss Smith left in October, 1930; that Miss Smith was receiving from the appellant board, room and nursing care; that Miss Smith's condition was such as to require extra attention on more than one occasion although not constantly; that the services ordinarily rendered by the appellant, which were rendered without extra charge, were the services needed during the daytime; that the appellant gave massage treatments without extra charge a time or two but not as a regular thing; and that during the time she was there the appellant "did small things" for Miss Smith other than the services customarily given. When asked as to what she had herself observed, this witness testified that she had seen the appellant rendering some extra services to Miss Smith; that at different times massages were given without extra charge but not always; and that an extra charge was customarily made for night nursing. When asked whether or not the appellant "rendered any nursing services at night to Miss Smith" she replied, "yes". It will be noted that while this testimony was to the effect that some extra services were rendered by the appellant to Miss Smith, there is no evidence as to the amount of such services, as to their frequency or as to exactly what was done. On the other hand, Caroline Wood testified as follows:

"The agreement was for One Hundred Dollars a-month, and when she had special massages she paid her a little bit extra, but the general agreement was for One Hundred Dollars a-month."

"A. During the whole time Miss Smith was there, except the last two months when she had her last illness and was in bed she paid One Hundred and Thirty-five Dollars, except now and then a little bit extra for massages."

This evidence is to the effect that the extra services therein mentioned were paid for. The respondent introduced into evidence fourteen checks given from Miss Smith to the appellant during the period in question, in addition to her regular monthly payments, which total $139.56. There is also evidence that after Miss Smith's second fall in August, 1930, the appellant asked for and was thereafter paid an increased compensation of $35 per month. In ad-

dition, Mrs. Burton was employed as a night nurse during most of the remaining time that Miss Smith remained in appellant's home.

The showing that an indebtedness existed on August 28, 1930, was far from satisfactory and it cannot be said that there is no evidence to the contrary. The agreed compensation was paid regularly and extra payments were made on several occasions. The indefinite evidence to the effect that "some" extra services were rendered was met by proof that "some" such services had been paid for. The evidence justifies the inference that all bills were being paid each month, and it cannot be held, under the circumstances, that no further proof on the part of the appellant was necessary to establish an indebtedness.

The only evidence as to what was said at the time the check was signed on August 28, 1930, was given by Mrs. Burton and, in our opinion, this testimony fails to show the settlement of any account at that time, disputed or otherwise, and fails to show either an admission of a debt in that amount or an agreement to pay the same as an indebtedness. Mrs. Burton testified that "Miss Smith asked Mrs. Rogers for the check she had previously made out to her for $5,000" and also testified as follows:

"On this particular morning, Mrs. Rogers and Miss Smith were talking over business affairs which happened to be the monthly check that Miss Smith made out to Mrs. Rogers each month, and when that was satisfactorily finished with the both parties concerned, why, Miss Smith asked Mrs. Rogers if she had a check that she had made out to her April the 3rd, 1929. Q. What did Mrs. Rogers say in reply to that? A. Mrs. Rogers said, 'Yes,' and went immediately and got the check and produced it in a white envelope to Miss Smith. Q. Let me go back a moment—you say Miss Smith asked Mrs. Rogers if she had a check she had made out in 1929, who had made out the check? A. Miss Smith. Q. And the check was produced you say? A. Yes, in that white envelope. Q. Then what was said and done? A. Then Miss Smith asked Mrs. Rogers if she had a blank check and Mrs. Rogers said, 'yes'. And Miss Smith said that she wanted her to make out a check; then Mrs. Rogers asked her who she should make it out to and Miss Smith said, 'To yourself, Margaret Rogers'. Mrs. Rogers

asked what the amount was and Miss Smith said, 'Ten Thousand dollars'. After writing the numbers on the check, Mrs. Rogers held the check in front of Miss Smith so she could see it and Miss Smith said it was for ten thousand, not for a thousand as Mrs. Rogers had first written, then— Q. How much had been written? A. A thousand. Q. And what did Miss Smith say? A. She said, 'Ten Thousand dollars'. Then Mrs. Rogers proceeded to add another naught to the check. And after writing the amount, Mrs. Rogers then asked Miss Smith—or previous to this, Mrs. Rogers had remonstrated about the amount, and asked Miss Smith if she was sure that was the right amount and Miss Smith had said 'Yes'. Q. What was it that Mrs. Rogers said as to the amount? A. Well, she had remonstrated about the amount. Q. What do you mean by 'she remonstrated about it', what did she say? A. She asked Miss Smith if she was sure had she realized what the amount really was, Miss Smith said, yes, that is what she wanted her to have as compensation for what she had done, because she had not only been nurse to her, but also a friend and companion to her. And after Mrs. Rogers had written out the amount in writing, she handed the check to Miss Smith, and Miss Smith signed it. Q. That was in your presence? A. Yes. Q. And after signing it, what did Miss Smith do with it? A. She then had a white slip and a pin with which she pinned that white slip to the check. Q. And after she pinned that check and that white slip of paper together, what did she do with the white slip of paper and check? A. She handed them to Mrs. Rogers.''

It would appear from this evidence that no bill was presented, no amount was named as being due for extra services and the existence of a debt was not discussed. The matter came up after their business "was satisfactorily finished" and when the appellant was asked to write the check she did not know who was to be the payee or what was to be the amount thereof. When told these facts she remonstrated as to the amount and asked Miss Smith if she was sure the amount named was correct and if she was sure she realized what the amount really was. Miss Smith did not refer to the matter as a debt but stated it was the amount "she wanted her to have" and this not as compensation for extra services but because she had been a friend

and companion to her. This is far from an admission of an agreement to pay an existing debt in a fixed amount. At the same time Miss Smith took up an old check for $5,000 which she had given to the appellant some sixteen months before, which she asked for and evidently expected the appellant to still have in her possession. There is evidence that Miss Smith carefully examined her bank statements each month and therefore knew that she had only $1200 in the bank. These facts, with the language used by the deceased on this occasion, indicate, and justify the inference, that the check in question was given to the appellant by way of a gift and not as an admission and agreement concerning an existing indebtedness. Expressions which merely imply gratuitous intentions are not sufficient to constitute the admission of debt and agreement to pay which are requisite to an account stated. (*Outwaters* v. *Brownlee, supra.*)

 It is further contended that the court erred in arbitrarily rejecting the testimony of Mrs. Burton. In addition to what has already been said with respect to the effect of her testimony, a number of considerations appear which may well have justified the trial court in not accepting the same at its face value. While the court may not arbitrarily disregard the unimpeached testimony of a single witness (*Hynes* v. *White,* 47 Cal. App. 549 [190 Pac. 836]), it is also true that inconsistencies in such testimony and inherent improbabilities appearing from the surrounding circumstances may affect the amount of credit to be given thereto. (*Whitaker* v. *Whitaker,* 137 Cal. App. 396 [30 Pac. (2d) 538].) This witness testified that at the time in question she heard Miss Smith say that she wanted Mrs. Rogers to have the check as compensation for what she had done. At another time, she testified that nothing was said during that conversation concerning any services rendered by Mrs. Rogers. Upon being prompted by the attorney for the appellant she then stated that nothing had been said about services other than what she had already testified to. She testified that all of the $10,000 check except the signature was written by Mrs. Rogers with her own fountain pen. The original check is before us and not only is it uncertain as to whether the date thereon was written by Miss Smith or by Mrs. Rogers, but it appears that the date was written

with ink of the same color as that appearing in the signature while the ink used on the rest of the check was of a different color. At one time she testified that the only check she saw Miss Smith sign on this occasion was the one for $10,000, while at another time she testified that she saw Miss Smith sign the regular monthly check at the same time. She testified that she did not see Miss Smith deliver any check to Mrs. Rogers other than the $10,000 check, while at another time she testified that she saw her hand the regular monthly check to Mrs. Rogers. She first testified that the check which she herself received on this occasion was for massage treatments, then that it was for night nursing and that she was then working there as a night nurse, and again, when asked how late she had worked the night before the check was delivered, that she had not worked any that night, as she was then working somewhere else in the daytime.

Among the general circumstances which throw some doubt upon her testimony may be mentioned the following: In the space provided for the name of the payee on the check in question, some writing had been started, but not completed, in the same ink as that used in the date and signature. In writing the name "Margaret Rogers" on this line, the "M" has been written over what was started in the other ink. At the top of the check certain printed words have been crossed out and written words substituted, both colors of ink being there used. If all of the writing on the check, except the signature, is that of the appellant, as claimed, and if the check was all written at one time, it was at least unusual to change ink so many times. In any event, the appearance of the check does not correspond with Mrs. Burton's story as to how it was written, and the number of changes on its face justifies caution in examining any explanation thereof. That the appellant would show the check to Miss Smith after writing the amount in figures, but before writing the amount in words on the next line, while possible, is rather unusual. It is strange that such a check should be used merely to recognize an indebtedness when the maker knew she had only $1200 in the bank. The fact that the appellant had received a prior check for $5,000 and that she had held the same without cashing for nearly a year and a half is in no way explained. It also appears

that Miss Smith expected her to have that check in her possession and asked for its return. The fact that the new check was likewise held for more than two months and presented only after Miss Smith had been judicially declared incompetent is not without its significance. Not only is the amount of the check out of all proportion to any possible extra services which may have been rendered but the evidence indicates that a bill for services had been paid regularly each month, including some compensation for extra services.

Not only are we unable to say that the trial court arbitrarily rejected the testimony of this witness for the appellant, but we think all of the evidence, taken together, is sufficient to sustain the court's finding on the question of fact presented.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.