[Civ. No. 2303.   Fourth Appellate District.—June 1, 1939.]

W. L. HILL, Appellant, v. SECURITY FIRST NATIONAL BANK OF LOS ANGELES, as Executor, etc., Respondent.

George J. Stepovich, Maurice C. Atchison and Harry W. Horton for Appellant.

Childers & Roberts for Respondent.

BARNARD, P. J.—James M. Dance died testate on January 4, 1937, leaving his property to six nephews and nieces, share and share alike. Five of these beneficiaries lived in Missouri. Plaintiff presented a claim to the executor of this estate which was rejected and this action followed.

The complaint sets forth two causes of action. The first is on *quantum meruit* for services rendered to the deceased at his special instance and request, the reasonable value of which is alleged to be $1875 plus 15 per cent of 5/6ths of the estate left by him. The second count alleges that an account was stated between the plaintiff and deceased whereby a balance was found and it was agreed that there was due from the deceased to the plaintiff the sum of $1875 plus 15 per cent of 5/6ths of the estate left by him. The court made findings and entered a judgment in favor of the defendant and the plaintiff has appealed.

The appellant's entire claim is based upon services which he claims to have performed at the request of the deceased in locating the nephews and nieces of the deceased, their addresses and even their existence being theretofore unknown to the deceased. It clearly appears that such services, if any, were rendered more than two years before the death of Mr. Dance, and no attempt was made to prove that any of such services were rendered within that time. The appellant introduced some evidence to the effect that he had spent some time and effort in locating these relatives and mainly relies, in so far as the evidence is concerned, on a letter or writing which he testified was handed to him by the deceased. This is addressed to four of the five relatives who lived in Missouri and reads as follows:

"Guy M. Ancell, Johlal E. Ancell, May Ancell Slater and Daisy Ancell Kerr, Slater, Mo.

"Dear Nephews and Nieces:—

"This is to certify that I, James M. Dance has known and dealt with Mr. W. L. Hill, for over 19 years and that Mr. Hill is directly responsible for locating each of you and causing me to meet and know you. For several years Mr. Hill has insisted on me allowing him to locate you for the purpose of you sharing in my Estate. After locating you he insisted on my making a trip to Slater, Mo., in order to satisfy myself that all of you are the children of my sister Georgia. This is the first time I ever went back there. I left home when I was eleven years of age on account of being mistreated by my father and I resolved never to turn back to my kin-folks. When I left home which was 76 years ago, I was so young that I hardly knew my mother and never knew anything about her folks or you children until Mr. Hill brought us together. I must say that you are deeply indebted to him. I have up to this date only seen most of you once and two of you twice in all my life. I want each of you to know that when I gave you the Twelve Thousand Five Hundred ($12,-500.00) Dollars in cash and U. S. Government Bonds in 1934 was intended to be your full share and part of my Estate and the balance was to go to Tommy Pettett and Mrs. Lansing and her children.

"I have never paid Mr. Hill for his services on many occasions &c., and have agreed with him for you to pay him fifteen (15) per-cent of any and all moneys you have and will receive through my Estate, including the above mentioned $12,500.00, and to be paid to him from out of your 5/6 interest in my Estate after my death. I hereby accept this as my obligation to W. L. Hill which I direct to be paid from your without litigation or Court procedure on your part as outlined in my last Will and Testament.

"This 11th, day of March 1936.

"JAMES M. DANCE."

The appellant contends that the court erred in finding that there was no account stated. It is argued that the evidence that he had spent time and effort in locating these relatives, together with this writing, established and proved an account stated, and the finding to the contrary is not supported by the evidence.

█ In order to constitute an account stated it must appear that at the time of the accounting a claim or claims existed, that a balance was then struck and agreed upon and that the defendant admitted that a certain and definite sum was due as a debt from him to the claimant. (*Walsh* v. *Parker*, 24 Cal. App. (2d) 224 [74 Pac. (2d) 531].) In *Petrosino* v. *Wakefield*, 138 Cal. App. 336 [31 Pac. (2d) 1056], the court said: "An account stated is something different from a mere acknowledgment that a party knows himself to be indebted to another in some amount." In *Bennett* v. *Potter*, 180 Cal. 736 [183 Pac. 156], it is said: "The theory upon which the action on an account stated is allowed is that transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same."

█ Examining the evidence, particularly this writing, in the light of these well-established rules, it must be held that there was a failure to prove an account stated. The writing which is mainly relied upon as proving an account stated falls short of establishing the necessary facts. The only agreement therein is that an indefinite amount, which could not then be determined and which was necessarily dependent upon many future things, was to be paid by others who were not parties to the agreement. According to the terms of the writing, the appellant had agreed to this arrangement. While the writer of the letter referred to "my obligation to W. L. Hill", he merely accepted the obligation, whatever it was, as one which he agreed that his legatees and devisees ought to pay and he accepted it only by directing them to pay the same. In effect, the writing is merely a statement that the parties to whom it is addressed are under an obligation to this appellant, that they ought to pay him, and that he desires them to do so. At best, it is only a direction as to what he wants them to do with a portion of what he has given them in his will. There is no attempt to fix a certain or definite amount of indebtedness and there is no agreement or promise, express or implied, that even the indefinite amount referred to

will be paid by the deceased. If there is anything clear from the language used in the writing it is that the writer thereof did not intend to pay anything to the appellant.

██ The appellant further contends that even if there was not an account stated, the writing in question is sufficient, under the provisions of section 360 of the Code of Civil Procedure, to toll the statute of limitations and therefore he should have recovered upon the first cause of action for the reasonable value of services rendered by him "at the special instance and request" of the deceased, the reasonable value thereof being fixed by the writing. We think this contention is without merit since the writing in question contains no reference to an existing debt owing to the creditor which the debtor was willing to pay. (*Clunin* v. *First Federal Trust Co.*, 189 Cal. 248 [207 Pac. 1009].) However, this is not important if there is support for the court's finding that the services of the appellant in locating these heirs were not performed at the request of the deceased but "were performed on the volition and at the insistence of the appellant and no one else". Not only is this finding supported by the above-quoted writing upon which the appellant's claim is largely based, but it is also supported by a letter written by the appellant to one of the nephews in Missouri under date of February 1, 1937, shortly after the death of the decedent. In this letter, among other things, he says:

"I am the one who had him to change his will. . . . I insisted from time to time on your Uncle Jim to allow me to locate you people, which was first strongly against his wishes, but finally got his consent. All of you would be very much surprised to actually know all what expired between he and myself regarding my locating you folks, whom he had never seen nor heard from or of . . . I have papers signed by him showing all of the above, and assuring me that I would be liberally taken care of by each and all of you, signed by James M. Dance. This is the reason I have never bothered you before, as he did not want me to do so as he said he might change his will . . . BE SURE TO REMEMBER, that Mr. Dance did not ask me to locate you folks, BUT I INSISTED ON HIM ALLOWING ME TO DO SO, evidence of which I have from Mr. Dance himself. Therefore Mr. Dance expected each and all of you to properly take care of me in

view of what I have done for each and all of you. This is as much a moral obligation as well as a legal obligation."

The finding in question is amply supported by the evidence.

In view of what has been said, it is unnecessary to consider the further questions as to whether the appellant's claim is based upon a written instrument within the meaning of section 706 of the Probate Code and if so, whether his claim was properly filed or presented since a copy of the writing was not attached thereto.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.